UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Gordon Miles, | Case No. 23-CV-2848 (JRT/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jodi Harpsteadt, Nancy Johnston, and Terry Kneisel, in their official capacities, | |
| Defendants. | |

This matter is before the Court on Jodi Harpstead,[1] Nancy Johnston, and Terry Kneisel's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 4). The motion was referred to the undersigned United States Magistrate Judge for a Report and Recommendation. For the reasons set forth below, the Court recommends granting in part and denying in part the motion.

## I.   Background

Plaintiff Gordon Miles is civilly committed to the Minnesota Sex Offender Program ("MSOP"). (Am. Compl. ¶ 3, Dkt. No. 1-1.) He is suing Jodi Harpstead, Nancy Johnston, and Terry Kneisel in their official capacities for allegedly violating his First and Fourteenth Amendment rights. Mr. Miles alleges that during all relevant times Ms. Harpstead was the Commissioner of the Minnesota Department of Human Services; Ms. Johnston was the

---

[1] Defendant Jodi Harpstead's last name is misspelled as "Harpsteadt" in the caption of the Amended Complaint, and the Court will use the correct spelling in this Report and Recommendation.

Executive Director of MSOP; and Mr. Kneisel was the Director of MSOP. (*Id.* ¶¶ 4–6.) Defendants move to dismiss the Amended Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### A. Relevant Allegations in the Amended Complaint

Mr. Miles brings two claims. First, he contends that the conditions of confinement at MSOP are more punitive than the conditions of confinement for state prisoners, which violates his Fourteenth Amendment due process rights. In support of this claim, Mr. Miles alleges the following:

- Defendants do not maintain an adequate security staff. (*See* Am. Compl. ¶ 7 & p. 9.)[2] When Mr. Miles was first civilly committed in 2014, there were usually at least two security counselors in view or in a given area. (*Id.* ¶ 7.) Security counselors actively communicated with the clients. (*Id.*) Whenever clients gathered, an "A-Team" of security counselors would be present. (*Id.* ¶ 8.) Random room searches occurred each week, and a full unit lockdown occurred at least once a year. (*Id.* ¶ 12.) Now, Mr. Miles alleges, there are not enough security counselors to keep MSOP clients and staff safe. (*Id.* ¶ 16.) Clients have only five minutes to travel from one place to another, and clients have been assaulted. (*Id.*) Clients "are sexually acting out, fighting, gambling," and using drugs and alcohol. (*Id.*) Random room searches are rare. (*Id.* ¶ 20.)

- Defendants do not maintain sufficient medical and clinical staff. (Am. Compl. p. 9.) Previously, the medical unit had enough nursing staff. (*Id.* ¶ 10.) Now, nursing staff must work overtime, and treatment groups have been reduced. (*Id.* ¶¶ 18–19.) A nurse is no longer assigned to Unit Beta. (*Id.* ¶ 18.) Treatment groups have been reduced from two or three per week to two per week; Phase I and II core groups are mixed; and there are no more modules due to a lack of clinicians. (*Id.* ¶ 19.)

- Defendants do not provide access to the State Law Library. (*Id.* p. 9.) When Mr. Miles was on state parole, he could use the State Law Library. (*Id.* ¶ 13.) Now he cannot. (*Id.* ¶ 21.)

---

[2] The Court cites to paragraph numbers when they are used in the Amended Complaint but to page numbers when they are not.

- Mr. Miles cannot apply for federal Pell grants for educational courses, as state prisoners can. (*Id.*)

- Defendants do not provide television services comparable to what state prisoners have. (*Id.* p. 9.) "Minncor Central Canteen and Cable Television" is a television service provided to state prisoners. (*Id.* ¶ 14.) MSOP does not provide a similar television service. (*Id.* ¶ 22.)

- Defendants do not allow MSOP clients to purchase or own electronic tablets. (*Id.* p. 9.) State prisoners may purchase electronic tablets on which they can use email and store games, books, and music. (*Id.* ¶¶ 15, 23.) The tablets provided by MSOP are inferior, and a client's purchases are lost when MSOP reclaims the tablet. (*Id.* ¶ 23.)

Mr. Miles' second claim is that Defendants violated his First Amendment right to free speech by enacting and enforcing against him MSOP Policy 420-5330 ("Yard Use Policy"). (Am. Compl. p. 10.) On May 11, 2023, a security counselor shouted at Mr. Miles for talking to another client through two fences. (*Id.* ¶ 24.) The Yard Use Policy prohibits clients from communicating with others through fences. (*Id.* ¶ 26; Am. Compl. Ex. 2, Dkt. No. 1-1.) Mr. Miles contends the incident chilled his free speech, and he fears retaliation or punishment. (Am. Compl. ¶ 27.) He has not been able to speak with the other client since the incident happened. (*Id.*)

As relief, Mr. Miles seeks a declaratory judgment and a permanent injunction. (*Id.* p. 12.) He does not explicitly request monetary relief, although he does ask for any other relief that the Court may deem "fit and just." (*Id.*)

**B.    Defendants' Motion to Dismiss**

Defendants move to dismiss Mr. Miles' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argue that the First Amendment claim should be dismissed because it is barred under the doctrine of claim preclusion. They argue that

3

the Fourteenth Amendment claim should be dismissed under the claim-preclusion doctrine and because it fails to state a plausible claim for relief. Finally, to the extent that Mr. Miles seeks monetary damages, Defendants argue the request should be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1).

## II.     Legal Standards

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff need not plead "detailed factual allegations," but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. For a claim to be facially plausible, the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the Court accepts the factual allegations as true and views them most favorably to Mr. Miles. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). A court may consider not only the complaint and its attached exhibits but also matters of public record and materials necessarily embraced by the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

Rule 12(b)(1) requires the Court to dismiss any case over which it lacks subject-matter jurisdiction. A party may mount either a facial attack or a factual attack on subject-matter jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 729, n.6. (8th Cir. 1990). Here, Defendants bring a facial attack to any potential claim for monetary damages against them in their official capacities. (Defs.' Mem. Supp. Mot. Dismiss at 1.) In this

circumstance, the Court considers only the Amended Complaint, and Mr. Miles receives the same protections as the Rule 12(b)(6) framework provides. *See Osborn*, 918 F. 2d at 729 n.6.

Courts must construe *pro se* complaints liberally, but a *pro se* plaintiff must still allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[I]n fulfilling its duty to liberally construe a civil-rights pleading," a court need not "divine the litigant's intent and create claims that are not clearly raised," nor "read or construct an argument into a civil-rights pleading." *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004). Courts are also not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 915.

### III. Discussion

#### A. First Amendment Claim

Defendants argue that Mr. Miles' First Amendment claim is precluded because it was litigated or could have been litigated in a prior case, specifically, in *Karsjens v. Harpstead*, No. 11-CV-3659 (DWF/TNL) (D. Minn.) ("*Karsjens*"). Claim preclusion "provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Plough By & Through Plough v. W. Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 515 (8th Cir. 1995) (quotation omitted). The elements of claim preclusion are "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based

5

upon the same claims or causes of action." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998).

There is no dispute over the first three elements. First, *Karsjens* resulted in a final judgment on the merits. *See Karsjens v. Harpstead*, 74 F.4th 561 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 814 (2024); *see also Larson v. Minn. Sex Offender Program*, No. 13-CV-1074 (JRT/DJF), 2024 WL 448305, at *4 (D. Minn. Feb. 6, 2024) ("[I]t is undisputed that the *Karsjens* lawsuit resulted in a final judgment . . . ."). Second, the *Karsjens* suit was based on proper jurisdiction. *See Larson*, 2024 WL 448305, at *4 (citing *Karsjens*, 74 F.4th at 565).

Third, Mr. Miles was in privity with the *Karsjens* plaintiffs.[3] In certain circumstances, "a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit." *Midwest Disability Initiative v. JANS Enters., Inc.*, 929 F.3d 603, 607 (8th Cir. 2019) (cleaned up).

> [A] party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned, . . . and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the nonparty's interests . . . .

*Taylor v. Sturgell*, 553 U.S. 880, 900 (2008). The Court first finds that the interests of Mr. Miles are aligned with those of the *Karsjens* plaintiffs. Like Mr. Miles, the *Karsjens*

---

[3] The class action certified in *Karsjens* consisted of "[a]ll patients *currently* civilly committed in the Minnesota Sex Offender Program pursuant to Minn. Stat. § 253B." *Karsjens v. Jesson*, 283 F.R.D. 514, 520 (D. Minn. 2012) (emphasis added). The class was defined in 2012. Mr. Miles was civilly committed in 2014, so the Court must consider whether he was in privity with the *Karsjens* plaintiffs or class members.

6

plaintiffs were civilly committed to MSOP and challenged the conditions of confinement and free-speech restrictions at MSOP. Second, the Court finds that the *Karsjens* plaintiffs understood they were acting in a representative capacity. *See Karsjens v. Jesson*, 283 F.R.D. 514, 519 (D. Minn. 2012) ("The Plaintiffs have amply demonstrated that they are willing to work diligently to protect the interests of the class—particularly in light of the fact that all other similar cases are stayed pending the resolution of this matter. Plaintiffs have freely accepted the substantial responsibility of being the face of this litigation and advancing this case for all MSOP patients."). The Court also finds, in the alternative, that the *Karsjens* court took great care to protect the interests of all MSOP clients. *See, e.g.*, *Karsjens v. Harpstead*, No. 11-CV-3659 (DWF/TNL), 2022 WL 542467, at *18 (D. Minn. Feb. 23, 2022) (expressing serious concern over "the confinement of the elderly, individuals with substantive physical or intellectual disabilities, and juveniles, who might never succeed in the MSOP's treatment program or who are otherwise unlikely to reoffend"; and exhorting the State of Minnesota to refine MSOP policies and procedures "with an aim towards providing humane and evidence-based clinical services to civilly committed clients"). Accordingly, the Court concludes that the *Karsjens* plaintiffs' representation of Mr. Miles was "adequate" for preclusion purposes.

Turning to the privity of Defendants, Defendants Harpstead, Johnston, and Kneisel were either named defendants in *Karsjens* or in privity with the named defendants, as are all officials of the Minnesota Department of Human Services "sued in connection with their alleged roles and responsibilities as representatives of MSOP." *See Greene v. Benson*,

No. 11-CV-979 (JRT/DJF), 2023 WL 3815422, at *5 (D. Minn. June 5, 2023), *R. &. R. adopted*, 2023 WL 5016653 (D. Minn. Aug. 7, 2023).

As to the fourth element, the Court finds that Mr. Miles' general challenge to the Yard Use Policy could have been raised in *Karsjens* because it is based on the same factual predicate. "[W]hether two claims are the same for [claim preclusion] purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Murphy v. Jones*, 877 F.2d 682, 684–85 (8th Cir. 1989). The Yard Use Policy at issue in this case states in relevant part: "Clients are prohibited from engaging in the following activities in all yards, including but not limited to . . . communicating with others through any fence . . . ." (Am. Compl. Ex. 2 at 2, Dkt. No. 1-1.) The yard use policy in effect during *Karsjens* "prohibited in all yards . . . client communication with others through any fence . . . ." (Noss Decl. Ex. 4 at 2, Dkt. No. 7-1.) The language of the two policies is essentially identical.

Despite the similarity of language, Mr. Miles points out that the effective date of the current Yard Use Policy—the one at issue in this case—is July 5, 2022, and thus the policy could not have been challenged in *Karsjens*. The relevant wording of the two policies is essentially the same, however, which renders the effective date immaterial.

Turning to the substantive content of the Yard Use Policy, Mr. Miles alleges that the policy violated his First Amendment right to free speech because it limits his contact with another MSOP client. Although the plaintiffs in *Karsjens* asserted a First Amendment free-speech claim, they did not explicitly challenge the yard use policy in effect at that

time.[4] *See* Third Am. Compl. ¶¶ 307–15, *Karsjens v. Jesson*, No. 11-CV-3659 (D. Minn. Oct. 28, 2014), Dkt. No. 635. Rather, their First Amendment free-speech claim was based in large part on allegedly high charges for phone use and on limited access to newspapers and magazines. (*Id.* ¶¶ 310–11.) But another aspect of their First Amendment claim did challenge limitations on contact between MSOP clients. (*Id.* ¶ 309.) Those limitations correspond to the effect of the Yard Use Policy challenged here by Mr. Miles: that the Yard Use Policy limits his contact with another MSOP client. That correlation, the essentially identical language in the two policies, and the *Karsjens* court's reference to the yard use policy in its findings of fact, *see Karsjens v. Harpstead*, No. 11-CV-3659 (DWF/TNL), 2022 WL 542467, at *9 (D. Minn. Feb. 23, 2022), lead the Court to the conclusion that Mr. Miles' general challenge to the Yard Use Policy arose from the same nucleus of operative facts as *Karsjens* and could have been raised in *Karsjens*. Mr. Miles' general challenge to the constitutionality of the Yard Use Policy is barred by claim preclusion.

Although Mr. Miles' general claim is precluded, he contends that his specific and individual claim did not arise until the May 11, 2023 incident, and thus could not have been

---

[4] Defendants suggest otherwise. In Defendants' words, "[o]ne of the policies before the [*Karsjens*] court was a version of the MSOP Yard Use policy with nearly identical language to that at section J.6 of the alleged MSOP Yard Use policy attached to Plaintiff's Amended Complaint." (Defs.' Mem. Supp. Mot. Dismiss at 8, Dkt. No. 6.) But it was the *Karsjens* defendants who put the policy "before the court" by attaching it to an affidavit in support of their summary-judgment motion. Johnston Aff. Ex. 4, *Karsjens v. Harpstead*, No. 11-CV-3659 (DWF/TNL), Dkt. No. 725-1. The Third Amended Complaint filed in *Karsjens* does not explicitly mention the policy. Which side put the policy before the *Karsjens* court is less material, however, than the court's acknowledgment of the policy as one of many that struck "an appropriate balance between security and therapeutic needs, and [did] not appear to cause the MSOP Clients harm." *See Karsjens v. Harpstead*, No. 11-CV-3659 (DWF/TNL), 2022 WL 542467, at *9 (D. Minn. Feb. 23, 2022), *aff'd*, 74 F.4th 561, *cert. denied*, 144 S. Ct. 814 (2024).

litigated in *Karsjens*. An allegation of "specific and individualized conduct" may "fall[] outside the scope of the *Karsjens* common nucleus of facts," and hence may not be barred by claim preclusion. *Larson*, 2024 WL 448305, at *5. "However, surviving claim preclusion does not mean those allegations amount to a cognizable legal claim." *Id.* After determining that claim preclusion did not apply to an MSOP client's allegations concerning a specific incident, the *Larson* court proceeded to consider whether the plaintiff had pleaded a plausible claim for relief. *Id.* at *6–7.

Here, however, Defendants did not move to dismiss on the ground that Mr. Miles' allegations do not state a plausible First Amendment claim. (*See* Defs.' Mem. at 6–11.) They sought dismissal of the First Amendment claim only under the doctrine of claim preclusion. (*See id.* at 5 ("Plaintiff fails to state a First Amendment free speech claim (Count II) because that claim is barred by claim preclusion.").) Defendants neither set forth the elements of a First Amendment claim nor applied them to Mr. Miles' allegations. (*See* Defs.' Mem. at 6–11.) The Court will not create these arguments for Defendants. The Court must, therefore, recommend that Defendants' motion to dismiss Mr. Miles' First Amendment claim be denied to the extent that claim is based on the specific and individualized conduct that allegedly occurred on May 11, 2023.

### B.     Fourteenth Amendment Due-Process Claim

Mr. Miles contends that Defendants have "allowed MSOP to deteriorate and become punitive in nature" due to the combined effect of several conditions of confinement, including inadequate security, medical, and clinical staff; lack of access to the State Law Library and federal Pell grants; and inferior television services and electronic

10

device policies. Mr. Miles denies bringing independent claims for each of these alleged deprivations (such as failure to protect or deliberate indifference to a serious medical need); rather, he argues that the cumulative effect of these conditions of confinement creates a more restrictive environment than prison and is therefore punitive. (*Id.* at 8.) According to Mr. Miles, his "only claim being advanced" is whether he is "entitled to more considerate treatment and conditions of confinement than criminals." (*Id.*)

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "Neither pretrial detainees nor civilly committed individuals may be punished without running afoul of the Fourteenth Amendment." *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "In analyzing whether a condition of confinement is punitive, courts 'decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Id.* (quoting *Bell*, 441 U.S. at 538).

In *Karsjens*, the plaintiffs claimed that, when "considered as a whole, their conditions of confinement amount to punishment in violation of the Fourteenth Amendment." *Karsjens*, 988 F.3d at 1051. The Eighth Circuit directed the trial court on remand to "review the totality of the circumstances of . . . confinement" in determining whether the conditions at MSOP were unconstitutionally punitive. *See id.* at 1054. On remand, the trial court considered conditions of confinement such as double occupancy rooms, behavioral expectation reports and grievance procedures, client movement, meals, group therapy, client property, furniture removal, random searches, employment options,

and restraints. *See Karsjens*, 2022 WL 542467, at *14–17. The court found "that no condition, in isolation, or in combination, constitutes a *Bell* violation." *Id.* at *17.

### 1. Claim Preclusion

Mr. Miles' Fourteenth Amendment claim is barred by claim preclusion. As set forth in Part III.A above, *Karsjens* resulted in a final judgment on the merits, was based on proper jurisdiction, and involved the same parties or those in privity with them. Mr. Miles' Fourteenth Amendment claim, which is based on the totality of the alleged conditions of confinement, certainly could have been litigated in *Karsjens*. The conditions described by Mr. Miles were either litigated in *Karsjens* or arise from the same nucleus of facts as the claims that were litigated. Specifically, the *Karsjens* plaintiffs alleged that the ratio of security counselors had decreased over the last few years, that counselors were less involved in the therapeutic aspects of MSOP, that treatments like group therapy and support groups had been reduced, that clinical and treatment staff numbers were inadequate, that restrictions on law-library access were punitive, that limited access to educational programming was punitive, and that limitations on personal computers and Internet access were unconstitutional. Third Am. Compl. ¶¶ 89–90, 92, 95, 110, 138, 173–78, *Karsjens v. Jesson*, No. 11-CV-3659 (D. Minn. Oct. 28, 2014), Dkt. No. 635. Therefore, Mr. Miles' Fourteenth Amendment due-process claim is barred by claim preclusion.

### 2. Failure to State a Claim

In the alternative, Mr. Miles' due-process claim fails because no alleged condition, either alone or in combination, constitutes a *Bell* violation. Although Mr. Miles denies

bringing individual conditions-of-confinement claims, *Karsjens* instructs that any such claims should be considered both alone and in combination.

Mr. Miles' allegations concerning inadequate security staff is best analyzed as a failure-to-protect claim. "Failure-to-protect claims brought by civilly-committed MSOP patients are analyzed under the same standard that applies to Eighth Amendment deliberate-indifference claims by prisoners." *Lindsey v. Kneisel*, No. 22-CV-413 (NEB/DJF), 2023 WL 386730, at *4 (D. Minn. Jan. 6, 2023) (citing *Nelson v. Shuffman*, 603 F.3d 439, 446 n.3 (8th Cir. 2010)), *aff'd*, No. 23-1125, 2023 WL 4241805 (8th Cir. June 29, 2023) This claim has two elements: "The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a sufficiently culpable state of mind." *Nelson*, 603 F.3d at 446 (cleaned up). Here, Mr. Miles has not alleged sufficient facts to plausibly support a substantial risk of serious harm. He vaguely alleges there are not enough security counselors to keep MSOP clients and staff safe, that clients are hurried to and from locations, that clients have been assaulted, and that clients are engaging in illicit activities. Mr. Miles does not allege, however, that *he* has been directly affected by or injured by any of these conditions. He only vaguely alludes to "clients." Even construing Mr. Miles' pleading liberally, he has not plausibly alleged that the lack of security staff posed a substantial risk of serious harm to him. *See Prouty v. DHS, MSOP of the State of Minn.*, No. 21-CV-01349 (SRN/TNL), 2021 WL 3051982, at *3 (D. Minn. July 20, 2021) (finding that MSOP client did not plausibly allege a substantial risk of serious harm because he did not allege facts showing he was endangered by the

challenged conduct). Nor has Mr. Miles alleged sufficient facts to establish the second element: that the named prison officials were aware of facts that created a substantial risk of serious harm to him and actually drew the inference that such a risk existed. Therefore, Mr. Miles has not pleaded a plausible claim for failure to protect.

Mr. Miles also fails to state a claim for deliberate indifference to a serious medical need. The deliberate-indifference standard applies "to a civilly committed individual's claim of inadequate medical care." *Karsjens*, 988 F.3d at 1051. "Deliberate indifference is a higher standard than gross negligence and the plaintiff must show that a known excessive risk to health was disregarded." *Larson* 2024 WL 448305, at *7 (citing *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006)). To meet this standard, "a plaintiff must show a 'mental state akin to criminal recklessness.'" *Id.* (quoting *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015)). Mr. Miles has not alleged adequate facts to establish a serious medical need or that any Defendant knew about but deliberately disregarded that need. He merely alleges there are not enough nurses or clinical staff and that group treatment has been reduced.

To the extent Mr. Miles alleges that inadequate treatment is punitive in nature, that claim fails because he has no substantive "due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered [his] involuntary confinement." *Karsjens v. Piper*, 845 F.3d 394, 410 (8th Cir. 2017) (quoting *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012)).

The Court views Mr. Miles' allegations concerning lack of access to the State Law Library as an "access to the courts" claim. *See Pittman v. Swanson*, No. 11-CV-3658 (PJS/TNL), 2023 WL 2404044, at *11 (D. Minn. Jan. 27, 2023) (citing *White v. Kautzky*,

14

494 F.3d 677, 679–80 (8th Cir. 2007)), *R. & R. adopted*, 2023 WL 2238703 (D. Minn. Feb. 27, 2023). Prisoners have a right to access the courts. *White*, 494 F.3d at 679. The "right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996). The inmate must have suffered an actual injury to assert a plausible claim for relief. *Lewis*, 518 U.S. at 349. "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351. These legal standards are also applicable to civil detainees. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1037 (8th Cir. 2012). Mr. Miles has not alleged how the MSOP law library is constitutionally inadequate or how he has been injured or prejudiced by having to use it. Therefore, he has not stated a plausible access-to-the-courts claim.

Mr. Miles' remaining allegations concern cable television channels, Pell grants, and computer tablets. These allegations do not involve constitutionally protected interests. *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (finding limited computer privileges to be a "de minimis restriction[] 'with which the Constitution is not concerned'"); *Semler v. Johnston*, No. 20-CV-1062 (WMW/LIB), 2021 WL 942095, at *3 (D. Minn. Mar. 12, 2021) (noting there is no constitutional right to watch television); *Opiacha v. Dep't of Human Servs.*, No. 20-CV-1032 (NEB/DTS), 2020 WL 4813361, at *4 (D. Minn. Aug. 19, 2020) (stating that an individual "does not have a constitutionally

15

recognized right to an education . . . while civilly committed"). Accordingly, these allegations cannot found the basis of a due-process claim.

Finally, the Court has considered in combination all of the conditions alleged by Mr. Miles and finds they do not, together, state a plausible due-process claim.

### C. Monetary Relief

Mr. Miles is seeking a declaratory judgment and a permanent injunction. He does not explicitly request monetary relief, though he does ask for any other relief that the Court may deem fit and just. To the extent this request could be seen as a request for monetary relief, it should be dismissed for lack of subject matter jurisdiction. *Treleven v. Univ. of Minnesota*, 73 F.3d 816, 818 (8th Cir. 1996) ("[T]he Eleventh Amendment prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities . . . .").

## IV. Recommendation

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Jodi Harpstead, Nancy Johnston, and Terry Kneisel's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 4) be **GRANTED** as to Mr. Miles' Fourteenth Amendment claim, the First Amendment claim challenging the Yard Use Policy in general, and any request for monetary damages; and **DENIED** as to the First Amendment claim based on the specific and individualized conduct that occurred on May 11, 2023.

Date: July 22, 2024               *s/ John F. Docherty*
                                   JOHN F. DOCHERTY
                                   United States Magistrate Judge

## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days after being served a copy of the objections. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).