**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

GORDON MILES,

                                       Civil No. 23-2848 (JRT/JFD)

              Plaintiff,

v.

JODI HARPSTEADT, NANCY JOHNSTON,
and TERRY KNEISEL, *in their official*
*capacities*,

              Defendants.

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND**
**RECOMMENDATION**

---

Gordon Miles, 1111 Highway 73, Moose Lake, MN 55767, *pro se* Plaintiff.

Anthony R. Noss, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, Saint Paul, MN 55101, for Defendants.


Plaintiff Gordon Miles initiated this action against Defendants Jodi Harpstead,[1] Nancy Johnston, and Terry Kneisel in their official capacities for allegedly violating his First and Fourteenth Amendment rights as a patient civilly committed to the Minnesota Sex Offender Program ("MSOP") facility in Moose Lake, Minnesota. Defendants moved to dismiss Miles's Amended Complaint. Magistrate Judge John F. Docherty filed a report and recommendation ("R&R") recommending the Court deny the motion to dismiss as to the First Amendment claim and grant the motion as to the Fourteenth Amendment claim.

---

[1] In the Amended Complaint, Defendant Jodi Harpstead's surname is misspelled; however, aside from the caption, the Court will refer to her in this order using the correct spelling.

Miles objected to Magistrate Judge's recommendation to dismiss his Fourteenth Amendment claim, and in those objections, Miles voluntarily dismissed his First Amendment claim.  Because Miles's Fourteenth Amendment claim is barred by claim preclusion and because he fails to state a claim upon which relief can be granted, the Court will overrule Miles's objections, adopt the Magistrate Judge's R&R as to the Fourteenth Amendment claim, and grant the Defendants' motion to dismiss.

## BACKGROUND

### I.   FACTS

Since 2014, Gordon Miles has been civilly committed at MSOP, a facility operated by the Minnesota Department of Human Services ("DHS").  (Am. Compl. ¶¶ 3–4, 7, Sept. 15, 2023, Docket No. 1-1.)[2]  Miles alleges that Defendants, in their official capacities as employees of DHS and/or the State of Minnesota, violated his constitutional rights under the First and Fourteenth Amendments.  (*Id.* ¶¶ 4–28.)   Because Miles voluntarily dismissed his First Amendment claim, the Court will not address it here.

Miles alleges Defendants violated his Fourteenth Amendment due process rights because the conditions of confinement at MSOP facilities are more restrictive than the conditions of confinement for state prisoners.  (*Id.* at 12.)  Specifically, he alleges that Defendants do not maintain adequate security, medical, or clinic staff at the MSOP

---

[2] The Court cites to paragraph numbers in the Amended Complaint when they are used but page numbers when they are not.

facility; that MSOP clients are not provided access to the State Law Library; that MSOP

clients are not provided access to federal Pell grants for education; that MSOP clients are

not allowed to own electronic tablets for entertainment and communication; and that

Defendants provide an inferior television service to MSOP clients.  (*Id.* ¶¶ 7–23.)

## II.      PROCEDURAL HISTORY

Miles brought his claim against Defendants Jodi Harpstead, Nancy Johnston, and

Terry Kneisel in their official capacities on two counts: one under the Fourteenth

Amendment and a second under the First Amendment.  (*Id.* at 5, 10, 13.)  Defendants

moved to dismiss both claims.  (Mot. Dismiss, Sept. 22, 2023, Docket No. 4.)   The

Magistrate Judge issued an R&R recommending that at least part of the First Amendment

claim be allowed to proceed but recommending dismissal of the Fourteenth Amendment

claim based on claim preclusion and, in the alternative, for failure to state a claim.  (R. &

R. at 12–16, July 22, 2024, Docket No. 19.)  Both parties timely objected in part to the

R&R.  (Defs.' Obj., Aug. 1, 2024, Docket No. 20; Pl.'s Obj., Aug. 5, 2024, Docket No. 22.)

Construed liberally, Miles objects to the R&R's recommendation to dismiss his Fourteenth

Amendment claim on two grounds: (1) that the R&R erred in finding claim preclusion

barred his claim; and (2) that the R&R erred in finding that the conditions of his

confinement, in their totality, do not rise to the level of punishment.  (Pl.'s Obj. at 1–4.)

Despite the R&R recommending part of his First Amendment claim survive, Miles

nevertheless voluntarily dismissed his First Amendment claim "as Moot" as part of his

objection to the R&R.  (*Id.* at 1.)  Because the Defendants' only objection to the R&R asked

the Court to dismiss the First Amendment claim in its entirety, that objection is now moot. (Def.'s Obj. at 4.)

## DISCUSSION

### I.    STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews *de novo* a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to *de novo* review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015). The Eighth Circuit has been willing to liberally construe otherwise general *pro se* objections to R&Rs and to require *de novo* review of all alleged errors. *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994).

Because Miles is proceeding *pro se* and because he objects specifically to the Magistrate Judge's recommendation that (1) claim preclusion bars his claims, and (2) his conditions of confinement do not rise to the level of punishment, the Court will review those parts of the R&R *de novo*.

-4-

II.     **ANALYSIS**

The Magistrate Judge recommended dismissing the Fourteenth Amendment claim

based on claim preclusion or, in the alternative, for failure to state a claim.  Under *de novo*

review, the Court reaches the same conclusion, so it will overrule Miles's objection, adopt

the R&R, and dismiss Miles's Fourteenth Amendment claim with prejudice.

A.     **Claim Preclusion**

Under the doctrine of claim preclusion, "a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been

raised in that action."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  The elements of claim

preclusion are that "(1) the first suit resulted in a final judgment on the merits; (2) the

first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those

in privity with them); and (4) both suits are based upon the same claims or causes of

action." *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (citation omitted).

The long-winding *Karsjens* litigation serves as the basis for claim preclusion.  These

cases involved a class of MSOP clients alleging similar facts and claims to the those in the

action Miles now brings.  For a detailed procedural and factual history of those cases, see

*Karsjens v. Piper (Karsjens I)*, 845 F.3d 394, 398–403 (8th Cir. 2017); *Karsjens v. Lourey*

*(Karsjens II)*, 988 F.3d 1047, 1049–50 (8th Cir. 2021); *Karsjens v. Harpstead (Karsjens III)*,

74 F.4th 561, 565–67 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 814 (2024).

Undisputedly, *Karsjens* resulted in a final judgment on the merits.  *See Karsjens III*,

74 F.4th 561; *see also Larson v. Minnesota Sex Offender Program*, No. 13-1074, 2024 WL

448305, at *4 (D. Minn. Feb. 6, 2024).  Additionally, nobody disputes that the prior court

exercised proper jurisdiction.  *See Karsjens III*, 74 F.4th at 565.  However, the parties

dispute the final two elements of claim preclusion.

The third element is met because, though Miles was not part of the original

*Karsjens* class,[3] he is in privity with them.  Privity can exist when there is a substantive

legal relationship between the parties (e.g., successive owners of property, bailee and

bailor, and assignee and assignor).  *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).  But it can

also exist "in limited circumstances" when a party was "adequately represented by

someone with the same interests" in prior litigation.  *Id.*  Courts find support for privity

when the plaintiffs in the first case understand their action to be on behalf of the plaintiffs

in the second case and when the court made special efforts to protect subsequent

plaintiffs.  *S. Cent. Bell Tel. Co. v. Alabama*, 526 U.S. 160, 167 (1999).  The Eighth Circuit

describes privity between parties that are "so closely related" and "their interests are so

nearly identical, that it is fair to treat them as the same parties for purposes of

determining the preclusive effect" of the prior judgment.  *Ruple v. City of Vermillion*, 714

F.2d 860, 862 (8th Cir. 1983).  The standard is not an overly strict one; rather, privity is

"merely a word used to say that the relationship between the one who is a party on the

---

[3] Miles was civilly committed in 2014, meaning he was not a member of the original class. *Karsjens v. Jesson*, 283 F.R.D. 514, 520 (D. Minn. 2012) (certifying a class of "All patients currently civilly committed in the Minnesota Sex Offender Program pursuant to Minn.Stat. § 253B").

record, and another is close enough to include that other within the res judicata." *Elbert*,

903 F.3d at 782.

The Defendants do not address the privity of Miles with the plaintiffs in *Karsjens*,

but the facts demonstrate that the class adequately represented Miles's interests.

Though Miles just missed the window for being part of the original class in 2012, the

*Karsjens* litigation continued for several years after class certification. *See Karsjens III*, 74

F.4th 561 (finally ending the third and final round of appeals in 2023). Along the way,

Plaintiffs were vigorously advocating for the ever-changing class of persons civilly

committed at MSOP, which quickly included Miles. The *Karsjens* plaintiffs understood

their case to be on behalf of patients like Miles. *See Karsjens v. Jesson*, 283 F.R.D. 514,

519 (D. Minn. 2012) (noting original named plaintiffs "freely accepted the substantial

responsibility of being the face of this litigation and advancing this case for all MSOP

patients"). And the court took care to protect patients like Miles. *See Karsjens v.*

*Harpstead*, No. 11-3659, 2022 WL 542467, at *18 (D. Minn. Feb. 23, 2022) (expressing

"serious concern" for "the confinement of the elderly, individuals with substantive

physical or intellectual disabilities, and juveniles, who might never succeed in the MSOP's

treatment program or who are otherwise unlikely to reoffend"). Having reviewed the

original *Karsjens* litigation thoroughly, the Court finds the original plaintiffs adequately represented Miles in their litigation.  They were thus in privity with Miles.[4]

The fourth element is also met because both suits are based upon the same claims or causes of action.  "[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate."  *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989).

Here, the facts that give rise to Miles's claims are essentially the same as those thoroughly litigated in *Karsjens*.  Miles alleges Defendants violated his Fourteenth Amendment due process rights because the conditions of confinement at MSOP facilities are impermissibly punitive.  But after considering MSOP conditions like double occupancy rooms, behavioral expectation reports and grievance procedures, client movement, meals, group therapy, client property, furniture removal, random searches, employment options, and restraints, the *Karsjens* court eventually found "that no condition, in isolation, or in combination, constitutes" a Fourteenth Amendment violation.  *Karsjens*, 2022 WL 542467, at *14–17.  Though of course the full facts Miles alleges here do not mirror the original *Karsjens* Complaint precisely, these claims still arise from the same nucleus of operative fact and were or could have been raised in the original litigation.

---

[4] Of note, no party disputes that Defendants were the same as or in privity with the Defendants in the *Karsjens* litigation.  The Court agrees and adopts that determination.

Because all four elements of claim preclusion are met, Miles's Fourteenth Amendment claim is barred.

**B.     Failure to State a Claim**

Miles also objects specifically to the Magistrate Judge's conclusion that the totality of Miles's conditions of confinement do not rise to the level of punishment.   Miles primarily argues that the Magistrate Judge applied the wrong standard and that the court should have compared his restraints strictly against those of state prisoners.   But the Eighth Circuit commands a different standard.

*Karsjens II* made clear that complaints about constitutionally impermissible constraints in civil confinement at MSOP should be evaluated under the standard set forth in *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  *See Karsjens II*, 988 F.3d at 1054.  Under *Bell*, the conditions of confinement for a civilly committed person cannot rise to the level of punishment.  441 U.S. at 535–37.  Courts must therefore decide whether the restraint "is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."  *Id.* at 538.  Having reviewed the totality of the circumstances of the conditions of confinement, *Karsjens II*, 988 F.3d at 1054, the Court finds no Fourteenth Amendment claim has been stated.

In his Amended Complaint, Miles lists several restraints he believes collectively rise to the level of punishment.  Specifically, those include (1) a decline in security measures at MSOP, (2) a decline in the quality of medical treatment at MSOP, (3) a lack of access to the State Law Library and federal Pell grants for education, and (4) a lack of electronic

tablets and subpar television services.   The Court finds that these restraints, both individually and in combination, do not rise to the level of punishment. [5]

Miles's first allegations are that MSOP has fewer security officers than it once did, that random room searches have become increasingly rare, and that once-yearly unit lockdowns have declined in frequency.  Essentially, he argues that clients at MSOP have not been restrained **enough** by security personnel.  A reduction in the security staff and a resulting less frequent policing of errant behavior cannot plausibly be construed as punitive.

Miles next complains that MSOP does not have enough nurses on staff and that the group treatment programming has declined in frequency.  The Amended Complaint, however, does not explain how this has resulted in punitive confinement conditions, much less that there is no legitimate government purpose for maintaining that particular level of medical staff.   Additionally, there is no substantive "due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement."  *Karsjens I*, 845 F.3d at 410 (quoting *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012)).  Taking Miles's allegations as true, the nursing staff reductions do not rise to the level of punishment.

---

[5] Miles does not object to the Magistrate Judge's determinations that he failed to state individual claims for failure to protect, deliberate indifference, and access to the courts, instead focusing on the totality of the circumstances. The Court thus adopts the R&R's recommendations on those arguments in full and will only consider Miles's objections to the R&R's determination that his restraints impermissibly rise to the level of punishment.

Access to the State Law Library and federal Pell grants for educational courses also serve as the basis for Miles's punishment claims. But Miles pleads no other facts as it relates to these allegations, and without more, neither allegation suggests they are conditions of confinement that rise to the level of punishment.[6]

Finally, Miles describes poor television conditions at MSOP and an inability to purchase tablets. But lack of access to tablets and high-quality television do not involve constitutionally protected interests. *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 n.7 (8th Cir. 2006) (finding limited computer privileges to be a "de minimis restriction[] with which the Constitution is not concerned"); *Semler v. Johnston*, No. 20-1062, 2021 WL 942095, at *2 (D. Minn. Mar. 12, 2021) (noting "there is no constitutional right to watch television"). A failure to provide patients with high-quality technology is not punitive in nature.

None of these claims—standing alone nor as whole—rise to the level of punishment in light of the legitimate government interests they serve. Miles's Fourteenth Amendment claim must also be dismissed for failure to state a claim.

## CONCLUSION

Gordon Miles claims that the Defendants are violating his First and Fourteenth Amendment rights as a civilly committed patient at MSOP. Because Miles voluntarily

---

[6] To the extent these should be construed instead as access-to-courts claims, Miles does not object to the R&R's finding that these allegations fail to state a claim.

dismissed his First Amendment claim before this Court could rule on it, it will be dismissed without prejudice.   Because the Fourteenth Amendment claim is barred by claim preclusion and fails to state a claim, the Court will dismiss the Fourteenth Amendment claim with prejudice.

The Court notes that it is dismissing these claims because the Eighth Circuit significantly narrowed the scope of a Fourteenth Amendment claim for confinement conditions at MSOP in the *Karsjens* litigation.  However, the Court feels compelled to note that the policymakers who have allowed MSOP to persist in its current state should not take this Order as a sign to rest on their laurels.  This Court has been inundated with claims over the last decade from MSOP patients who have meticulously documented what it feels like to live in the shadow of hopelessness.  Having served their time behind bars, these individuals have now been involuntarily committed to a program that many of them have slowly begun to realize is temporary in name only.  They now seek to bring out of the shadows and into the light serious allegations about the state of their treatment services at the Moose Lake facility.  Their pleas should no longer be ignored—a policy solution is long past due.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objection to the Report and Recommendation [Docket No. 22] is **OVERRULED**.

2. Defendants' Objection to the Report and Recommendation [Docket No. 20] is **MOOT**.

3. The Magistrate Judge's Report and Recommendation [Docket No. 19] as to Plaintiff's Fourteenth Amendment claim is **ADOPTED**.

4. Defendants' Motion to Dismiss [Docket No. 4] is **GRANTED** as follows:

   a. Plaintiff's Fourteenth Amendment claim is **DISMISSED WITH PREJUDICE**.

   b. Plaintiff's First Amendment claim is **DISMISSED WITHOUT PREJUDICE**.

DATED:  September 30, 2024
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge